Jack Silver, Esquire SB# 160575
LAW OFFICE OF JACK SILVER
708 Gravenstein Hwy. No. # 407
Sebastopol, CA 95472-2808
Telephone: (707) 528-8175
Email: JsilverEnvironmental@gmail.com

Edward E. Yates, Esquire SB# 135138
LAW OFFICE OF EDWARD E. YATES
20 Skylark Drive, Suite 12
Larkspur, CA 94939
Telephone: (415) 990-4805
Email: eyates@marinlandlaw.com

Attorneys for Plaintiff
CALIFORNIA RIVER WATCH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA RIVER WATCH,<br><br>               Plaintiff,<br><br>v.<br><br>LEE P. MARTINELLI, LEE P. MARTINELLI, JR., CAROLYN MARTINELLI, NUPTIAL BIRD PROPERTIES, LLC, and ZIA GIA PROPERTIES, LLC,<br><br>               Defendants. | CIVIL CASE NO. 3:18-cv-00030-WHO<br><br>**CONSENT DECREE AND ORDER** |

The following [Proposed] Consent Decree and Order ("Consent Decree") is entered into by and between Plaintiff California River Watch ("CRW") and Defendants Lee P. Martinelli, Lee P. Martinelli, Jr., Carolyn Martinelli, Nuptial Bird Properties, LLC and Zia Gia Properties, LLC (collectively, "Martinelli").  CRW and Martinelli are sometimes individually referred to herein as "Party" and collectively as "Parties."

## I.    RECITALS

A.    Martinelli has an ownership and/or operational interest in the real property located at 3357 River Road, Windsor, California (associated with Sonoma County Assessor Parcel Numbers 057-061-017, 057-061-018 and 057-061-019 and depicted on the Sonoma

County Assessor's parcel map attached hereto as **Exhibit A**) ("River Road Property"), which real property is the subject of the Complaint for Declaratory Relief, Injunctive Relief and Remediation ("Complaint") filed by CRW in this action on January 3, 2018.

B.    Martinelli also has an ownership and/or operational interest in real property located at 3395 Woolsey Road, Windsor, California (associated with Sonoma County Assessor Parcel Number 057-061-023 and depicted on the Sonoma County Assessor's parcel map attached hereto as **Exhibit A**) ("Woolsey Road Property") and real property located at 2788 Guerneville Road, Santa Rosa, California (associated with Sonoma County Assessor Parcel Number 034-110-072 and depicted on the Sonoma County Assessor's parcel map attached hereto as **Exhibit B**) ("Guerneville Road Property").  For purposes of this Consent Decree, all properties identified in Section I.A and I.B (and depicted in Exhibits A and B attached hereto) are covered by the terms of this document and are referred to herein as "Covered Properties."

C.    CRW filed its Complaint in this action pursuant to the citizen suit provisions of the federal Endangered Species Act ("ESA"), 16 U.S.C. § 1531, et seq.

D.    Martinelli disputes CRW's allegations as set forth in the Complaint and contend it has not violated the ESA in any manner.  Martinelli does not admit any of the substantive allegations contained in the Complaint, and neither Martinelli's consent to entry of this Consent Decree nor any provision contained herein shall be construed as an admission of fact or liability for any purpose.

E.    The Parties consent to the entry of this Consent Decree without trial of any issues, and without admission by Martinelli of any alleged liability, violation, or wrongdoing. The Parties have chosen to resolve in full CRW's lawsuit and allegations as set forth in the Complaint, and hereby stipulate that, in order to settle the claims alleged against Martinelli in the Complaint, and to avoid the delay and expense of further litigation, the Court should enter this Consent Decree and dismiss with prejudice CRW's lawsuit and all claims alleged against Martinelli in the Complaint.  In mutual consideration for the resolution of CRW's lawsuit, the Parties agree to the terms set forth herein.  This Consent Decree constitutes a final judgment with respect to and a settlement of CRW's lawsuit and the disputed claims encompassed

therein.

NOW, THEREFORE, in consideration of this Consent Decree, and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties intend to be legally bound and agree as set forth below.

## II.  CONSENT DECREE

A.  **Jurisdiction**: The Court has jurisdiction over the subject matter of this action and the Parties pursuant to ESA § 11(g)(1)(A), 16 U.S.C. § 1540(g)(1)(A).  The basis for assignment of this case to the Northern District of California ("District"), pursuant to 16 U.S.C. § 1540(g)(3)(A), is that the alleged violations of the ESA asserted in the Complaint are purported to have taken place on property and land located within the District, and Martinelli conducts business within this District.  The Court shall retain jurisdiction of this matter to enforce this Consent Decree for a period of five (5) years from the Effective Date.  The Court may extend its retention of jurisdiction over this matter upon a showing of good cause.

B.  **Effective Date**: The Effective Date of this Consent Decree shall be the date upon which the Consent Decree is entered by the Court and becomes a final enforceable order.

C.  **Conservation Measures**:  Without admitting any fact, wrongdoing, or liability, Martinelli shall undertake the conservation measures set forth below ("Conservation Measures") on the Covered Properties.  Unless otherwise specified herein, Martinelli's obligation to undertake the Conservation Measures shall terminate if any of the following occur: (a) the Sonoma County Distinct Population Segment of the California Tiger Salamander ("CTS") is no longer listed as Threatened or Endangered under the ESA; (b) Martinelli obtains authorization from the California Department of Fish and Wildlife or United States Fish and Wildlife Service to "take" CTS; (c) after having provided a copy of the Conservation Measures from this Consent Decree to the California Department of Fish and Wildlife or United States Fish and Wildlife Service, Martinelli receives a determination from the California Department of Fish and Wildlife or United States Fish and Wildlife Service that Martinelli is not likely to adversely affect CTS; or (d) Martinelli's implementation of the Conservation Measures conflicts with any legal or regulatory mandate.  Additionally, Martinelli's obligation to undertake the Conservation

Measures is limited to matters and actions within Martinelli's power or control. Unless otherwise specified herein, the Conservation Measures are focused on and limited to the vineyard areas of the Covered Properties.

1. <u>Chemical Use</u>: Martinelli shall refrain from applying any pesticide, herbicide, rodenticide, or other chemical agents in the vineyards or orchards on the Covered Properties in a manner that would be harmful to CTS. To comply with and satisfy this restriction, Martinelli shall follow the limitations, if any, in the California Department of Pesticide Regulation's Endangered Species Custom Realtime Internet Bulletin Engine ("PRESCRIBE") (or similar state regulatory limitations if PRESCRIBE should ever not exist) as applied to the Covered Properties, except that between April 1 and October 31 Martinelli may apply fungicides and organic-approved materials (e.g., Organic Materials Review Institute [OMRI] listed substances allowed for use in certified organic operations under the USDA National Organic Program) to the grapevines without regard to restrictions in PRESCRIBE, if any. Notwithstanding any other provision herein, restrictions on Martinelli's chemical use shall not apply to any chemical application required by a regulatory agency or a legal or regulatory mandate. Martinelli shall provide CRW with an annual, or more frequent if Martinelli so chooses, report of chemical use ("Chemical Report") in the vineyards or orchards on the Covered Properties for five (5) years following the Effective Date ("Monitoring Period"). The Chemical Report shall include the following information: (a) chemical agent applied; (b) amount applied; (c) application location (i.e., which property); and (d) date of application.

2. <u>Rodent Management</u>: Martinelli shall not undertake any rodent management actions in the vineyards or orchards on the Covered Properties except in circumstances wherein Martinelli deems it reasonably necessary to prevent harm to crops, vineyards or structures. If rodent management actions are deemed reasonably necessary, Martinelli shall first attempt non-chemical means of control. If non-chemical means of control are unsuccessful, Martinelli may use the following pesticides/rodenticides (or generic equivalent): Warfarin, Diphacinone, or Chlorophacinone. Where rodents are known to be resistant to Warfarin, acute baits such as Bromethalin or Vitamin D3 may be used. If Martinelli

desires to use a pesticide/rodenticide not identified in this Section, Martinelli shall notify CRW of the intended use at least fourteen (14) days prior to application, and CRW may provide Martinelli with a recommended alternate pesticide/rodenticide. Martinelli shall consider CRW's recommendation and negotiate this issue in good faith.

      3.    Cover Crop Management:

      i.    **Guerneville Road Property**.

      a.    Cover Crops

For five (5) years following the Effective Date, Martinelli shall plant native perennial and annual cover crops ("Native Cover Crops") along the southern five (5) vineyard rows closest to Santa Rosa Creek (in the peripheral riparian tree shade influence) ("5-Row Zone") as generally depicted in **Exhibit C** attached hereto ("Initial Guerneville Planting"). The Native Cover Crops shall consist of a blend of the native plant species set forth in **Exhibit D** attached hereto.[1] Toxic perennial forbs (e.g., Asclepias, Apocynum) would be excluded from the cover crop planting mix if sheep grazing is used. If Martinelli desires to use a plant species not identified as one of the Native Cover Crops during the Initial Guerneville Planting, Martinelli shall notify CRW of the intended use at least fourteen (14) days prior to application, and CRW may provide Martinelli with a recommended alternate plant species. Martinelli shall consider CRW's recommendation and negotiate this issue in good faith. Martinelli may use other native or non-native plant species per the above sentence as part of its cover crop if the other native or non-native plant species does not compete with any of the Native Cover Crops.

If the Initial Guerneville Planting achieves satisfactory results by the end of the five (5) year planting period, Martinelli shall phase Native Cover Crops into the rest of the vineyard over a five (5) year period. Satisfactory results shall mean sufficient establishment of the target plant species and feasible maintenance, both reasonably assessed and determined by Martinelli. If satisfactory results are not achieved by the end of the five (5) year planting period, Martinelli shall plant conventional no-till cover crops throughout the vineyard in a manner consistent with

---

[1] Creeping wildrye and sedges would be established by plugs or sodding at intervals, rather than seeding. All other Native Cover Crops would be established by direct seeding.

regional agricultural practices.

b.  Maintenance

Martinelli shall maintain the cover crop by late winter and late spring mowing, subject to the ground being dry enough to permit the use of mowing equipment, for at least three (3) to five (5) years following the Effective Date.  Maintenance thereafter may include mowing or sheep grazing[2] at low to moderate stocking rates.  Mowing height and frequency of perennial creeping wildrye can be adjusted to invigorate (increased mowing frequency, lower mowing height) or devigorate (decreased mowing frequency, higher mowing) grape vines.  Other forms of maintenance as allowed under this Agreement may be necessary for crop maintenance, root management, compaction mitigation, and drainage.

c.  Monitoring

Martinelli shall demonstrate compliance with the cover crop management measures for the Monitoring Period by annually providing (when Martinelli submits the Chemical Report) CRW with date-stamped photographs of the Native Cover Crops around the vineyard.

ii.  **River Road Property**.

a.  Cover Crops

For five (5) years following the Effective Date, Martinelli shall plant Native Cover Crops in the outer 120-foot zone at the rear of the orchard near Mark West Creek ("120-Foot Zone") as generally depicted in **Exhibit E** attached hereto ("Initial River Road Planting").  The Native Cover Crops shall consist of a blend of the native plant species set forth in **Exhibit D** attached hereto.[3]  Toxic perennial forbs (e.g., Asclepias, Apocynum) would be excluded from the cover crop planting mix if sheep grazing is used.  If Martinelli desires to use a plant species not identified as one of the Native Cover Crops during the Initial River Road Planting, Martinelli shall notify CRW of the intended use at least fourteen (14) days prior to application, and CRW

---

[2] Vineyard sheep grazing for cover crop management can be adapted by: (a) specialized muzzles (e.g, "Wine-Baa" muzzles) that allow sheep grazing from a lowered head position, but not raised towards vines; (b) dwarf sheep (e.g., Babydoll Sheep), with browse heights under three (3) feet; (c) aversion training by doses of lithium chloride after grape bud break and leaf-out (ephemeral nausea associated with grape foliage consumption); or (d) seasonal grazing only after harvest and before leaf-out of grape vines.

[3] Creeping wildrye and sedges would be established by plugs or sodding at intervals, rather than seeding. All other Native Cover Crops would be established by direct seeding.

may provide Martinelli with a recommended alternate plant species. Martinelli shall consider CRW's recommendation and negotiate this issue in good faith. Martinelli may use other native or non-native plant species per the above sentence as part of its cover crop if the other native or non-native plant species does not compete with any of the Native Cover Crops.

If the Initial River Road Planting achieves satisfactory results in the 120-Foot Zone by the end of the five (5) year planting period, Martinelli shall phase Native Cover Crops into the rest of the orchard over a five (5) year period. Satisfactory results shall mean sufficient establishment of the target plant species and feasible maintenance, both reasonably assessed and determined by Martinelli. If satisfactory results are not achieved by the end of the five (5) year planting period, Martinelli shall plant conventional no-till cover crops throughout the orchard in a manner consistent with regional agricultural practices.

b.  Maintenance

Martinelli shall maintain the cover crop in the orchard by late winter and late spring mowing, subject to the ground being dry enough to permit the use of mowing equipment, for at least three (3) to five (5) years from the Effective Date. Maintenance thereafter may include mowing or sheep grazing[4] at low to moderate stocking rates. Mowing height and frequency of perennial creeping wildrye can be adjusted to invigorate (increased mowing frequency, lower mowing height) or devigorate (decreased mowing frequency, higher mowing) grape vines. Other forms of maintenance as allowed under this Agreement may be necessary for crop maintenance, root management, compaction mitigation, and drainage.

c.  Monitoring

Martinelli shall demonstrate compliance with the cover crop management measures for the Monitoring Period by annually providing (when Martinelli submits the Chemical Report) CRW with date-stamped photographs of the Native Cover Crops in the orchard.

4.  Disking and Tilling: Martinelli's current farming practices involve

---

[4] Vineyard sheep grazing for cover crop management can be adapted by: (a) specialized muzzles (e.g, "Wine-Baa" muzzles) that allow sheep grazing from a lowered head position, but not raised towards vines; (b) dwarf sheep (e.g., Babydoll Sheep), with browse heights under three (3) feet; (c) aversion training by doses of lithium chloride after grape bud break and leaf-out (ephemeral nausea associated with grape foliage consumption); or (d) seasonal grazing only after harvest and before leaf-out of grape vines.

disking, tilling and other cultivation on the Covered Properties up to a target depth of six (6) inches and six (6) to twelve (12) inches for crop maintenance, root management, compaction mitigation, and drainage, though greater depths may inadvertently be reached due to the imprecise nature of equipment construction and/or operation, uneven ground surfaces, and the like. Martinelli may continue its current farming practices with respect to disking, tilling and other cultivation to the minimum extent necessary. Any disking, tilling or other cultivation intended to reach a depth greater than twelve (12) inches shall be done in accordance with the Impact Avoidance Measures set forth in Section II.C.5.

        5.   <u>Impact Avoidance Measures</u>: Prior to any construction or future changes to the Covered Properties in the months of November through April that involve ground disturbance, excepting normal farming activities, other activities as allowed under this Consent Decree, and minor repairs and maintenance to existing infrastructure, a biological monitor shall conduct nighttime protocol surveys for CTS in the construction area, and under any equipment such as vehicles and stored pipes. If such surveys indicate the presence of CTS in construction areas, Martinelli shall not conduct construction until there is no potential for CTS being trapped in said infrastructure.

        D.   **Attorneys' Fees and Costs**: Within ten (10) days of the Effective Date, Martinelli shall pay CRW the sum of $38,000.00 in full settlement of CRW's attorneys' fees and costs incurred in this matter and to cover any and all future monitoring fees and costs related to this Consent Decree. Said payment(s) shall be in the form of a check made payable to "California River Watch" and mailed to Law Office of Jack Silver, 708 Gravenstein Highway North, #407, Sebastopol, CA 95472.

        E.   **Authorized Activities:** CRW shall not in any way challenge, dispute and/or object to any activity not prohibited by this Consent Decree, and the following Authorized Activities undertaken on the Covered Properties in compliance with the Conservation Measures described in Section II.C (to the extent applicable): (a) continued farming; (b) replanting; (c) planting; and (d) ancillary agriculture activities.

        F.   **Release and Covenant Not to Sue or Participate**: In consideration for

Martinelli's agreement to perform the Conservation Measures described in Section II.C, CRW covenants not to sue for and does for itself and its respective legal successors and assigns, release and absolutely and forever discharge Martinelli (and any other person or entity with an ownership or operational interest in the Covered Properties) and their respective agents, legal successors and assigns, of and from any and all present or future claims, demands, damages, debts, liabilities, accounts, reckonings, obligations, costs, expenses, liens, actions and causes of action of every kind and nature whatsoever, whether now known or unknown, suspected or unsuspected that: (a) CRW asserted or could have asserted in the Complaint based upon Martinelli's activities on and use of the Covered Properties; (b) have arisen or may arise from the conduct underlying the allegations in the Complaint; and (c) have arisen or may arise from the Authorized Activities set forth in Section II.E (collectively, "Released Matters"). Released Matters include but are not limited to any common law claims, and claims arising under municipal, local, state, or federal ordinances, statutes, or other laws including, but not limited to, Sections 7, 9, or 10 of the ESA, 16 U.S.C. § 1531 *et seq*., and any regulations promulgated pursuant to any municipal, local, federal and state ordinance, statute, or other law.

CRW, including anyone acting on its behalf as an agent and/or representative, shall not participate, fund or otherwise assist any other person, entity or organization in taking action, legal or otherwise, against Martinelli relating to the Released Matters.

In furtherance of the intentions set forth herein, CRW acknowledges that it is familiar with Section 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

CRW waives and relinquishes any right or benefit which it has or may have under Section 1542 of the California Civil Code or any similar provision of the statutory or non-

statutory law of any jurisdiction to the full extent that it may lawfully waive all such rights and benefits pertaining to the subject matter of this Consent Decree. In connection with such waiver and relinquishment, CRW acknowledges that it is aware that its attorneys or accountants may hereafter discover claims or facts in addition to or different from those which it now knows or believes to exist with respect to the subject matter of this Consent Decree or Martinelli, but that it is CRW's intention to hereby fully, finally and forever to settle and release all of the Released Matters, disputes and differences known or unknown, suspected or unsuspected, which now exist, may exist or heretofore have existed between and among CRW and Martinelli, except as otherwise expressly provided herein.

G.     **Dispute Resolution Procedure**: Any disputes with respect to any of the provisions of this Consent Decree shall be resolved through the following procedure:

1.     The Parties covenant and agree that, if either Party believes the other is in violation of one or more terms of this Consent Decree, the Party shall provide written notice to the other Party specifying the actions or inactions it deems to be in violation of this Consent Decree. Within thirty (30) days of receipt of such notice, the Party receiving the notice shall respond to the notice in writing. If the Parties still dispute compliance with this Consent Decree, the Parties shall meet and confer in a good faith attempt to informally resolve their dispute within an additional thirty (30) days.

2.     If the Parties cannot informally resolve their dispute pursuant to the procedures set forth above, they shall first attempt to resolve such dispute through mediation, using a mutually agreed upon mediator and splitting (50/50) all mutually beneficial mediation costs. Should mediation be unsuccessful, the Parties will enter into binding arbitration, conducted by an arbitrator agreed upon by both Parties. The Parties shall split (50/50) all mutually beneficial arbitration costs. The arbitration shall be binding and not subject to ordinary judicial appeal; however, it shall be subject to the procedural provisions provided for under Sections 1280, *et seq.* of the California Code of Civil Procedure. The arbitration shall be conducted in accordance with the arbitration rules and procedures of JAMS (Judicial Arbitration and Mediation Service) to the extent other conventional rules are not promptly agreed to by the

Parties. The relief the arbitrator is empowered to award is limited to injunctive relief to take action specified in this Consent Decree. The Parties shall each bear their own costs and attorney's fees in connection with the Dispute Resolution Procedure, as herein described.

3.     If CRW asserts that Martinelli is in violation of this Consent Decree and Martinelli corrects the action or inaction within sixty (60) days of written notice from CRW describing the asserted violations, no further enforcement action under the terms of this Consent Decree shall be taken by either Party.

H.     **Notice**: Except as otherwise stated herein, all reports, pictures, notices, consents, approvals, requests, demands, and other communications (collectively, "Notice") which the Parties are required or desire to serve upon or deliver to the other Party shall be in writing and shall be given by nationally-recognized overnight courier, by certified United States mail, return receipt requested, postage prepaid, addressed as set forth below, or by electronic mail addressed as set forth below:

If to CRW:                California River Watch
                          290 South Main Street, #817
                          Sebastopol, CA 95472

Copy to:                  Edward E. Yates, Esquire
                          Law Office of Edward E. Yates
                          1000 Fourth Street, Suite 800
                          San Rafael, CA 94901
                          Tel: (415) 526-6143
                          Email: eyates@marinlandlaw.com

If to Martinelli:         Lee Martinelli
                          8895 Martinelli Road
                          Forestville, CA 95435

                          Lee Martinelli, Jr.
                          P.O. Box 300
                          Fulton, CA 95439

Copy to:                  Craig A. Carnes, Jr.
                          Ellison, Schneider, Harris & Donlan LLP
                          2600 Capitol Ave., Suite 400
                          Sacramento, CA 95816
                          Tel. (916) 447-2166
                          Email: cac@eslawfirm.com

Peter Kiel, Esq.
Dickenson, Peatman & Fogarty
1455 First St. Suite 301
Napa, CA 94559
Tel. (707) 252-7122
Email: pkiel@dpf-law.com.

The foregoing addresses may be changed by Notice given in accordance with this Section.  Any Notice sent by certified mail shall be deemed received on the date shown in the proof of delivery.  Any Notice sent by electronic mail shall be deemed received upon electronic transmission thereof provided that the sender does not receive electronic notice of non-delivery.  Any Notice sent by overnight courier service shall be deemed received on the day of actual delivery as shown by the confirmation of delivery by the messenger or courier service.  If the date of receipt of any Notice to be given hereunder falls on a weekend or legal holiday, then such date of receipt shall automatically be deemed extended to the next business day immediately following such weekend or holiday for purposes of calculating time periods commencing upon the date of service.

I.  **Attorney's Fees and Costs**: Except as set forth in Section II.D above, each Party shall bear its own past and future costs and attorneys' fees relating to the subject matter of this Consent Decree.

J.  **Parties' Acknowledgment of Terms**:  The Parties and their respective counsel have carefully and fully read and reviewed this Consent Decree.  The Parties hereby represent that the contents of this Consent Decree are understood and agree that this Consent Decree is binding on each Party and its respective predecessors, successors, and assigns and as described herein.  This Consent Decree is entered into voluntarily, free of undue influence, coercion, duress, menace, or fraud of any kind. Neither Party, nor any officer, agent, employee, representative, or attorney of or for either Party, has made any statement or representation to the other Party regarding any fact relied upon in entering this Consent Decree, and no Party to this Consent Decree is relying upon any statement, representation, or promise of the other, nor of any officer, agent, employee, representative, or attorney of or for either Party, in executing this Consent Decree or in making the settlement provided herein, except as expressly stated in this

Consent Decree.

K. **Interpretation and Applicable Law**: This Consent Decree shall be construed and interpreted in accordance with the laws of the United States and the State of California without regard to principles of conflicts of law. This Consent Decree shall be interpreted and construed as a whole, according to its fair meaning and not strictly for or against any Party, and without regard to which Party drafted the Consent Decree. All of the promises, representations, and warranties contained in this Consent Decree survive its execution.

L. **Counterparts**: This Consent Decree may be executed in multiple counterparts, each of which shall evidence one and the same document.

M. **Entire Consent Decree in Writing**: This Consent Decree constitutes the entire agreement between the Parties hereto with respect to the subject matter set forth herein and supersedes all previous or contemporaneous negotiations, commitments (oral or written), and writings with respect to the subject matter set forth herein.

N. **Modification or Amendment**: This Consent Decree, including all exhibits attached hereto, may only be modified or amended by a written document executed by the Parties.

O. **Severability**: The invalidity or unenforceability of any provision of this Consent Decree shall in no way affect the validity or enforceability of any other provision. If, in any action before any court or other tribunal of competent jurisdiction, any term, restriction, covenant, or promise is held to be unenforceable for any reason, then such term, restriction, covenant, or promise shall be deemed modified to the extent necessary to make it enforceable by such court or other tribunal and, if it cannot be so modified, than this Consent Decree shall be deemed amended to delete such provision or portion adjudicated to be invalid or unenforceable, and the remainder of this Consent Decree shall be deemed to be in full force and effect as so modified. Any such modification or amendment in any event shall apply only with respect to the operation of this Consent Decree in the particular jurisdiction in which such adjudication is made.

P. **Parties Bound and Benefitted By This Consent Decree**: This Consent Decree,

and each of its provisions, including all representations, warranties, covenants, releases, and promises contained herein, binds and inures to the benefit of the Parties and each of their respective officers, directors, members, employees, contractors, heirs, assigns, present and future affiliates, parents, subsidiaries, predecessors and successors in interest whether by merger, consolidation, or otherwise, as well as their respective representatives, agents, and administrators, past, present, and future.

Q. **No Third-Party Beneficiaries**: Except as expressly provided herein, this Consent Decree is not intended to confer any rights or obligations on any third-party or parties, and no third-party or parties shall have any right of action under this Consent Decree for any cause whatsoever.

R. **Authority**: Each of the persons signing this Consent Decree on behalf of an entity represents and warrants that he or she has actual authority and capacity to execute this Consent Decree on behalf of the entity and to bind it to all of the terms of this Consent Decree.

S. **Court Approval**: The Parties hereby respectfully request that this Court promptly approve and enter this Consent Decree, which shall act as a dismissal with prejudice of CRW's lawsuit and all claims alleged against Martinelli in the Complaint. Upon entry of this Consent Decree, CRW and Martinelli waive their respective rights to a hearing or trial on the allegations of the Complaint and this Consent Decree shall constitute the final judgment of the Court in this action. If this Consent Decree is not approved and entered by the Court, it shall be of no force and effect, and it may not be used in any proceeding for any purpose.

**IT IS SO AGREED AND STIPULATED:**

Dated: June 25, 2018

CALIFORNIA RIVER WATCH

By: _____
Larry D. Hanson
Board President

///

///

Dated: June 20, 2018                    NUPTIAL BIRD PROPERTIES, LLC

                                         By: _____

Dated: June 20, 2018                    ZIA GIA PROPERTIES, LLC

                                         By: _____

Dated: June 20, 2018                    LEE P. MARTINELLI

                                         By: _____

Dated: June 20, 2018                    LEE P. MARTINELLI, JR.

                                         By: _____

Dated: June 24, 2018                    CAROLYN MARTINELLI

                                         By: _____

**APPROVED AS TO FORM:**

Dated: June 25, 2018                    LAW OFFICE OF JACK SILVER

                                         By: _____
                                                 Jack Silver

Dated: June 26, 2018                    LAW OFFICE OF EDWARD E. YATES

                                         By: _____
                                                 Edward E. Yates

Attorneys for Plaintiff
CALIFORNIA RIVER WATCH

Dated: June 21, 2018          ELLISON SCHNEIDER HARRIS & DONLAN LLP

                              By: _Craig A. Carnes_____
                                      Craig A. Carnes, Jr.

{00443094;4}                                    15
~~[PROPOSED]~~ CONSENT DECREE AND ORDER

Dated: June 25, 2018

DICKENSON, PEATMAN & FOGARTY

By: _____
Peter J. Kiel

Attorneys for Defendants
LEE P. MARTINELLI, LEE P. MARTINELLI, JR.,
CAROLYN MARTINELLI, NUPTIAL BIRD
PROPERTIES, LLC, and ZIA GIA PROPERTIES, LLC.

The Court having considered the representations of the Parties, NOW THEREFORE, before taking any testimony, and without any adjudication of any fact or law, hereby enters the Consent Decree.

**IT IS SO ORDERED**:

Dated and entered this 27th day of _____June_____, 2018.

_____
WILLIAM H. ORRICK
UNITED STATES DISTRICT JUDGE

**[PROPOSED]** CONSENT DECREE AND ORDER

# EXHIBIT A



# EXHIBIT B





EXHIBIT C

**Guerneville Road Property**

"5-Row Zone"for Native Cover Crops

# EXHIBIT D
## Native Cover Crops

### Winter Annuals

- Amsinckia intermedia
- Daucus pusillus
- Lupinus bicolor
- Navarretia squarrosa
- Plagiobothrys nothofulvus
- Salvia columbariae
- Trifolium wildenovii

### Summer Annuals

- *Clarkia purpurea* subsp. *quadrivulnera*
- *Clarkia gracilis* subsp. *sonomensis*
- *Clarkia amoena* subsp. *huntiana*
- *Croton setiger*
- *Epilobium brachycarpum*
- *Madia elegans*
- *Hemizonia congesta* subsp. *lutescens*
- *Hemizonia congesta* subsp. *luzulifolia*
- *Hemizonia congesta* subsp. *Clevelandii*

### Perennial Forbs

- Asclepias fascicularis [toxic livestock]
- Apocynum androsaemifolium [toxic livestock]
- Apocynym cannabinum [toxic livestock]
- Grindelia camporum
- Malvella leprosa
- Perideridia kelloggii
- Achillea millefolium
- Eschscholzia californica

### Perennial Grasses and Sedges

- Elymus triticoides
- Carex barbarae
- Carex praegracilis
- Melica imperfecta

### Bunchgrass

- Elymus glaucus
- Festuca idahoensis
- Bromus carinatus
- Festuca rubra molate



Legend

River Road Property
"120-FOOT ZONE" for Native Cover Crops

EXHIBIT E

Google Earth

© 2018 Google

800 ft